IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTADIVISION

Cedric Lackey

    Plaintiff,

    v.

Atlantic Recovery Solutions, LLC,
and
DNF Associates, LLC d/b/a
Diverse Funding Associates

    Defendants

Civil Action File No.:

**COMPLAINT WITH**
**JURY TRIAL DEMAND**

## PRELIMINARY STATEMENT

This action for damages is based upon the Defendant's overt and intentional, unlawful conduct in the furtherance of its efforts to collect a consumer debt. The Defendant's conduct is in violation of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 et seq. and the Georgia Fair Business Practices Act, (GFBPA) O.C.G.A. 10-1-390 et seq.

## PARTIES

1. Plaintiff, Cedric Lackey, is a natural person who resides in Rockdale County, Georgia.

1

2. Defendant, Atlantic Recovery Solutions, LLC, (hereinafter "ARS") is a limited liability corporation authorized to do business in Georgia and may be served with process via its registered agent, Registered Agents Inc., 300 Colonial Center Parkway, Suite 100N, Roswell, Georgia 30076.

3. Defendant, DNF Associates, LLC, (hereinafter "DNF") is a limited liability corporation authorized to do business in Georgia and may be served with process via its registered agent, Cogency Global Inc., 900 Old Roswell Lakes Parkway, Suite 310, Roswell, Georgia, 30076.

## JURISDICTION AND VENUE

4. This Court has federal question jurisdiction over Plaintiff's Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, et seq., claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d). This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

5. This Court has personal jurisdiction over Defendant because, inter alia, Defendants frequently and routinely conducts business in the State of Georgia, including the conduct complained of herein.

6. Pursuant to 28 U.S.C. § 1391, venue is proper in the Northern District of Georgia because a substantial part of the events or omissions giving rise to the claims occurred in this district.

7. Venue is proper in the Atlanta Division because the Defendant maintains a Registered Agent in Fulton which is in the Atlanta Division.

## **FACTUAL ALLEGATIONS**

8. Plaintiff is allegedly obligated to pay a consumer debt arising out of defaulted credit card account that was used for the purchase of ordinary household goods and services and is therefore, a "consumer", as that term is defined by 15 U.S.C. § 1692a(3).

9. ARS is a collection agency specializing in the collection of consumer debt.

10. ARS uses interstate commerce and/or mail in its business in the collection of consumer debts.

11. ARS markets itself as "insured, bonded debt recovery agency." See AtlanticRecoverySolutions.com. (Last visited March 2nd, 2021.)

12. ARS manages, and collects upon, thousands of consumer debt accounts annually.

13. ARS is, therefore, a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

14. DNF, which also does business as Diverse Funding Associates, is a debt-buyer. It's principal business is the purchase of consumer debt and the

collection of those accounts for its commercial benefit. Defendant regularly collects, or attempts to collect, directly or indirectly, debts owed or due, or asserted to be owed or due, to a third party.

15. DNF uses interstate commerce and/or mail in its business in the collection of consumer debts.

16. DNF markets itself as "insured, bonded debt recovery agency." See AtlanticRecoverySolutions.com. (Last visited March 2nd, 2021.)

17. DNF manages, and collects upon, thousands of consumer debt accounts annually.

18. DNF is, therefore, a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

19. The Plaintiff has fallen behind on a significant number of consumer debts, over the last few years.

20. In December, 2020 the Plaintiff accessed his credit report as published by Transunion. In reviewing that report he noted a account being reported by "Dnf Assoc" but also referenced "Diverse Funding Associates." The tradeline listed a an original creditor as Indigo Mastercard.

21. On December 16, 2020 Plaintiff contacted the phone number supplied by DNF in its reporting to Transunion in an effort to obtain information about the account in collection.

22. His call was answered by an individual that identified the recipient of the call as "Multisource". DNF never identified itself by its true name or its commonly used "dba" nor did it utilize any identifier it used in its credit reporting.

23. The Plaintiff was immediately confused by DNF's self-identification as Multisource.

24. Plaintiff advised the representative for DNF /Multisource that he was calling to obtain information about an item on his credit report. After verifying his identity through his social security number, DNF /Multisource confirmed it was collecting $627.00 as the balance owed from Plaintiff's "Indigo card". DNF/Multisource then advised the Plaintiff that the account was being handled by its collection agency, Atlantic Recovery, and referred him to it and gave him ARS's phone number.

25. On December 16th, 2020 the Plaintiff contacted ARS at the number provided by DNF.

26. After verifying his identity, Plaintiff asked who ARS was collecting for. The ARS representative, "Derek", responded that it was collecting for Indigo and that it was offering a settlement of $500.00 to close the account.

27. The Plaintiff asked if there were any interest or fees being added to the account. The Defendant responded that there "absolutely" were.

28. The Plaintiff next asked if this was the account that had been added to his credit report. The Defendant advised that it had been reported as of April 21st, 2020.

29. The Plaintiff then asked if it would be removed from his credit file if he paid the account off. The Defendant responded that they would not remove it but rather would update the tradeline to show it had been paid off. The Defendant went on to advise the Plaintiff that because the balance was under $1,000.00, he could remove the tradeline by writing a "pay for deletion letter" to all three credit reporting agencies advising them that he had paid the account off and that this course of action would increase his credit score.

30. Credit reporting is governed by the 15 U.S.C. § 1681 et. seq., The Fair Credit Reporting Act (FCRA).

31. The FCRA sets out specific criteria for the dispute of inaccurate credit information and its removal. 15 U.S.C. § 1681i(a)(5).

32. The FCRA does not provide for the removal of an otherwise accurate tradeline upon presentation of a "pay for deletion letter." This is not altered by the fact that the amount is "less than $1,000." Defendant's representations to the contrary were objectively false and intended to induce Plaintiff to prioritize the payment of the debt it was collecting.

33. Knowing he could not come up with $500.00 at one time, Plaintiff asked if, in the event Plaintiff was able to begin partial payments, they would be reflected on his credit report as reported by Defendant.

34. The Defendant responded that they would not. It would only be reflected as paid once it was paid off and provided it was done within twelve months.

35. The Plaintiff advised Defendant that he would contact the Defendant once he was able to set up a payment arrangement.

36. At all times relevant hereto, ARS was the agent of DNF. All actions and representations taken or made by ARS were at the behest and for the benefit of DNF. DNF is jointly liable for the actions of ARS.

37. For the next several weeks the Plaintiff agonized over his ability to begin making payments on the account in collection which he believed, based on the representations of ARS, was both accruing interest and could be deleted from

his credit report once it was paid off. Moreover, he did not know if any such payments would be applied properly due to the various and conflicting information as to the true creditor …DNF, Multisource, or Indigo.

38. On February 9th, 2021 the Plaintiff obtained a copy of his credit report as published by Transunion. In reviewing that report the Plaintiff discovered a tradeline being reported by CB Indigo referencing the MasterCard account that was now in collection by the Defendants. The tradeline from CB Indigo indicated that the account had been charged off and closed as of May 1st, 2020. Moreover, it showed that the balance owed at the time of charge-off was the same as the balance being collected by the Defendants.

39. Defendant ARS's representations and intimations that Plaintiff's account was continuing to accrue interest and that ARS was involved with the credit reporting of the account were both false and materially misleading.

40. The Defendant's false representations regarding accumulation of interest obscured the status and amount of the debt in collection and impairs the Plaintiff's decision-making with respect to which delinquent accounts she should address, and in what order.

## INJURIES-IN-FACT

41. The FDCPA provides consumers with "statutorily-created rights to be free from 'being subjected to false, deceptive, unfair, or unconscionable means to collect a debt.'" *McCamis v. Servis One, Inc.*, No. 8:16-CV-1130-T-30AEP, 2016 U.S. Dist. LEXIS 99492 (M.D. Fla. July 29, 2016); *Church v. Accretive Health, Inc.*, 654 Fed. Appx. 990, 2016 U.S. App. LEXIS 12414, 2016 WL 3611543 (11th Cir. 2016).

42. An injury-in-fact sufficient to satisfy Article III standing requirements "may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing." *Church*, at 993, quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373, 102 S. Ct. 1114, 71 L. Ed. 2d 214 (1982).

43. Violation of statutory rights are not a "hypothetical or uncertain" injury, but one "that Congress has elevated to the status of a legally cognizable injury through the FDCPA." *McCamis*, at 4, citing *Church*, at 3.

44. Defendant is subjecting Plaintiff to false, deceptive, unfair, and unconscionable means to collect the debt.

45. Defendants acts and omissions caused particularized harm to the Plaintiff in that the false and misleading information provided by Defendant hindered the Plaintiff from making the necessary decisions regarding the prioritization of his debt.

46. Accordingly, through the violation of Plaintiffs' statutorily created rights under the FDCPA, Plaintiffs have suffered an injury-in-fact sufficient to establish Article III standing.

## DAMAGES

47. As a result of the Defendants' actions and/or omissions, Plaintiff has suffered actual damages, including but not limited to the following:

   a.) Being subjected to false, deceptive, unfair, and unconscionable debt collection practices;

   b.) Confusion related to the Defendant's credit reporting practice that adversely impacted the Plaintiff's ability to prioritize debt payments when they were possible;

   c.) Uncompensated time expended away from work and/or activities of daily living, to confer with counsel regarding the Defendant's collection efforts;

   d.) Anxiety and worry caused by concern the debt being collected by Defendants increasing due to the continuing application of interest and fees. The anxiety and worry experienced by the Plaintiff was sufficient to negatively affect his demeanor, his ability to engage in daily activities, resulted in sleeplessness, and adversely affected his relationships with others.

## CAUSES OF ACTION

## COUNT I

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

## 15 U.S.C. § 1692 et. seq.

*Violations of 15 U.S.C. § 1692e and its subparts*

48. 15 U.S.C. § 1692e specifically prohibits the use of any false, deceptive, or misleading representations or means in connection with the collection of any debt.

49. The use of "or" in § 1692e means a representation violates the FDCPA if it is false or deceptive or misleading. *Bourff v. Rubin Lublin*, LLC, 674 F.3d 1238, 1241 (11th Cir. 2012).

50. The standard in determining the nature of any such representation is that of the "least sophisticated consumer." Its purpose is to protect "naive consumers" with a minimal understanding of personal finance and debt collection. *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1194 (11th Cir. 2010) (per curiam).

51. Moreover, the least sophisticated consumer is not to be held to the same standard as a reasonably prudent consumer. The least sophisticated consumer, though not unreasonable, is "ignorant" and "unthinking," "gullible," and of "below-average sophistication or intelligence," *Pinson v. JPMorgan Chase*

*Bank, Nat'l Ass'n*, No. 16-17107, 2019 U.S. App. LEXIS 33662, at 12-13 (11th Cir. Nov. 12, 2019), quoting *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993)

52. A false representation in connection with the collection of a debt is sufficient to violate the FDCPA, even if it is not alleged or proven to be misleading or deceptive.

53. DNF's self-identification as "Multisource" was intended to, and succeeded in, masking its identity as the owner of the Plaintiff's debt and its role as a collector.

54. The Defendants' representation that interest and or fees are being added to the amount in collection was objectively false and materially misleading as demonstrated by the tradelines reported by the originator of the debt and the current holder months apart.  This representation was a violation of 15 U.S.C. §§ 1692e, 1692d(2)(A), and 1692e(10).

55. Defendant's representation that partial payments would not be reported to Plaintiff's credit file was a threat to engage in unlawful activity in furtherance of its collection efforts and was a violation of 15 U.S.C. §§ 1692e, and 1692e(5).

56. The Defendant's false representation that Plaintiff could present a "Pay For Deletion" letter to the credit reporting bureaus to effectuate deletion of a

tradeline reported by a party other than the Defendant was objectively false and a violation of 15 U.S.C. §§ 1692e, §1692e(2)(A) and 1692e(10).

***Violations of 15 U.S.C. § 1692f and its subparts***

57. The conduct of the Defendant as described herein was unfair and unconscionable. It preyed upon perceived fears and lack of sophistication of the Plaintiff.

58. It violated other provisions of the Act to facilitate collection and, when it became clear payment by the Plaintiff was impossible, it sought to harass and embarrass the Plaintiff.

59. Defendant's conduct violated 15 U.S.C. § 1692f.

## COUNT II

## VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT

## O.C.G.A. § 10-1-390, et seq.

60. Plaintiff incorporates by reference paragraphs 1 through 59 as though fully stated herein.

61. O.C.G.A. § 10-1-390 et seq is commonly known as the "Fair Business Practices Act of 1975" (the "GFBPA").

62. The purpose of the GFBPA, is to protect consumers from unfair and/or deceptive practices in the conduct of any trade or commerce in part or wholly in the state. O.C.G.A. § 10-1-391.

63. O.C.G.A. § 10-1-391 directs that the GFPBA is to be interpreted and applied liberally and in harmony with the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1), which implements the FDCPA.

64. O.C.G.A. § 10-1-393(a) of the GFBPA broadly prohibits unfair and/or deceptive business practices.

65. Defendant intentionally engaged in unfair and deceptive business practices, as set forth herein, in an effort to collect a consumer debt.

66. Defendant's conduct has implications for the consuming public in general.

67. Defendant's conduct negatively impacts the consumer marketplace.

68. Upon information and belief, Defendant does not maintain a place of business in Georgia and has no assets in Georgia, thus relieving Plaintiffs of the Notice and Demand requirements of O.C.G.A. § 10-1-399(b).

69. As a result of Defendant's violations of O.C.G.A. § 10-1-393(a), Plaintiff is entitled to recover general damages pursuant to O.C.G.A. § 10-1-399(a).

70. As a result of Defendant's intentional violations of O.C.G.A. § 10-1-393(a), Plaintiff is entitled to recover exemplary damages pursuant to O.C.G.A. § 10-1-399(a).

71. As a result of Defendant's intentional violations of O.C.G.A. § 10-1-393(a), Plaintiff is entitled to recover treble damages pursuant to O.C.G.A. § 10-1-399(c).

72. Plaintiff is entitled to recover reasonable attorney's fees and expenses of litigation pursuant to O.C.G.A. § 10-1-399(d).

## **TRIAL BY JURY**

73. Plaintiff is entitled to and hereby requests a trial by jury.

WHEREFORE, Plaintiff prays that judgment be entered against the Defendants, jointly and severally, for:

a.) Plaintiff's actual damages;

b.) Statutory damages pursuant to 15 U.S.C. § 1692k;

c.) Reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k

d.) General, exemplary, and treble damages pursuant to O.C.G.A. § 10-1-399(a) & (c);

e.) Reasonable attorney's fees and costs pursuant to O.C.G.A. § 10-1-399(d); and

f.) Such other and further relief as may be just and proper.

Respectfully submitted this 13th day of July, 2021.

                **BERRY & ASSOCIATES**

                */s/ Matthew T. Berry*
                Matthew T. Berry
                Georgia Bar No.: 055663
                *matt@mattberry.com*
                2751 Buford Highway, Suite 600
                Atlanta, GA 30324
                Ph. (404) 235-3300
                Fax (404) 235-3333

                *Plaintiff's Attorney*